UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

PHILIP ISTRE and                    )
WILLIAM CHRETIEN,                   )
                                    )
            Plaintiffs,             )
                                    )
v.                                  )        No.:   3:15-CV-127-TAV-HBG
                                    )
HENSLEY PARTNERSHIP and             )
MARION FRANKLIN,                    )
                                    )
            Defendants.             )

### MEMORANDUM OPINION AND ORDER

This civil action is before the Court on the Motion for Preliminary Injunction [Doc. 11]. Defendants filed a response [Doc. 13], plaintiffs replied [Doc. 14], and defendants filed a supplemental response [Doc. 15]. The Court held a hearing on the motion and took the matter under advisement. After careful consideration of the record and the relevant law, the Court finds that the Anti-Injunction Act precludes the Court from issuing the requested injunction.

I.     **Background**

Plaintiff Philip Istre is a resident of Sevier County who has multiple sclerosis ("MS") [Doc. 1 ¶ 1]. Plaintiff William Chretien is also a resident of Sevier County who has prostate cancer [*Id.* ¶ 2]. Plaintiffs allege they are handicapped within the meaning of the Fair Housing Act ("FHA") [*Id.* ¶¶ 1–2].

On or about March 4, 2005, plaintiffs entered into a residential lease with defendant Hensley Partnership for real property located at 428 Keegan Drive, Apartment #28, Pigeon Forge, Tennessee 37863, for a term of four months [*Id.* ¶ 9]. According to plaintiffs, the term of the lease automatically renewed for four-month terms unless otherwise specified by Hensley [*Id.*].

On or about July 9, 2013, plaintiffs requested accommodations for Istre's MS [*Id.* ¶ 13]. Specifically, plaintiffs asked defendants to designate a handicapped parking spot in front of the leased premises and provide a ramp permitting ingress and egress from the leased premises [*Id.*]. Plaintiffs assert they offered to pay for these expenses [*Id.*]. Defendants allegedly denied these accommodations on the same day, stating that plaintiffs could move to an apartment with handicap accessibility when it became available [*Id.* ¶ 14]. Plaintiffs assert the accessible apartments have become vacant but defendants have never offered them to plaintiffs [*Id.*].

Plaintiffs claim defendants have stated that "the HUD Rules" do not apply to defendants [*Id.* ¶ 15]. Even so, Istre told Franklin that he would contact HUD for assistance [*Id.* ¶ 16]. The next day, defendants sent plaintiffs a letter, which stated that "[defendants] have received numerous telephone calls from several tenants . . . concerning the excessive complaints of racial harassment and harassment. If we have continued complaints we will be forced to terminate your lease with us" [*Id.*]. According to plaintiffs, they have never made racial comments or harassed any tenants [*Id.*].

2

Defendants then attempted to evict plaintiffs [*Id.* ¶ 17].  By letter dated July 10, 2013, defendants advised plaintiffs they had five days to vacate the unit due to late/non-payment of rent [*Id.*].  At the hearing, plaintiffs' counsel clarified that defendants dropped this eviction effort.  About three months later, on October 22, 2013, plaintiffs requested handicapped accessible parking again but defendants denied that request [*Id.* ¶ 18].  Then, on or about October 31, 2013, plaintiffs requested a ramp, but defendants told plaintiffs the ramp would have to be removed when not in use [*Id.* ¶ 19].

Plaintiffs again requested parking in May 2014 [*Id.* ¶ 20].  Defendants allegedly accused plaintiffs of having an inoperable vehicle and demanded its removal, threatening to tow the vehicle at plaintiffs' expense if it were not removed [*Id.*].  According to plaintiffs, at that time, the vehicle's battery was dead, and defendants treated other tenants whose vehicles were inoperable differently from plaintiffs [*Id.*].  Again in the summer of 2014, plaintiffs requested a ramp and designated handicapped parking [*Id.* ¶ 21].  Defendants denied the request for a ramp but did say they would provide a concrete bucket handicapped sign [*Id.*].  Plaintiffs allege that defendants never provided such a sign [*Id.*].

On December 18, 2014, Istre notified Marion Franklin, the property manager, that the tenants in Unit 34 were jumping across the floor twenty-five to thirty times [*Id.* ¶ 23].  According to plaintiffs, Franklin explained that the jumping was a response to Istre contacting law enforcement about loud music in the upstairs apartment [*Id.*].  Plaintiffs

3

allege defendants ignored their complaints about loud music and told the tenants to make as much noise as they wanted until ten o'clock [*Id.*].

On December 24, 2014, Hensley provided plaintiffs with an eviction notice, which was signed by Franklin. The notice provided plaintiffs until January 21, 2015, to vacate the leased premises [*Id.* ¶ 10]. As grounds, the final eviction notice provided: (1) "[l]ate/non-payment of rent;" (2) "[n]on-payment of rent promised to pay by 12/12/14 per Philip [Istre] $600 w/ late [fee];" (3) "[d]isorderly conduct;" (4) "[h]arassment of multiple tenants who have in the past occupied WV34, WV35, WV 29, or still do;" (5) "[r]epeated rule violations;" (6) "[v]andalism – damage to ceiling in kitchen + living area from broom/mop;" and (7) "refusing pest control + A/C filter change" [*Id.* ¶ 11 (some alterations in original)].

On or about January 23, 2015, Hensley filed detainer action in the General Sessions Court for Sevier County against Chretien and all occupants for possession of the leased premises [Doc. 11]. Plaintiffs attempted to remove the action to this Court, 3:15-CV-62-TAV-CCS, and file a counterclaim and third-party action under the FHA, but upon motion by defendants, the Court dismissed the counterclaims without prejudice and remanded the action to state court for lack of jurisdiction. Plaintiffs then commenced this action and filed a complaint with the Tennessee Human Rights Commission ("THRC") [*Id.*]. The THRC sent a "Refrain Letter" to Hensley, which requested that Hensley refrain from taking any legal action pending the investigation [*Id.*]. According to plaintiffs, defendants did not refrain from taking further legal action but set the detainer

4

action for trial on May 11, 2015 [*Id.*]. The General Sessions Court issued a judgment in favor of Hensley [*Id.*]. Under the judgment, Hensley is entitled to possession of the leased unit and back rent of $3,250 [Doc. 13]. Plaintiffs encountered issues in appealing the judgment and, on the day of the injunction hearing, filed a petition for writ of mandamus with the General Sessions Court requesting an order instructing the clerk to file an appeal [Doc. 14]. Plaintiffs also filed a motion to stay execution of the judgment [Doc. 15].

In their complaint, plaintiffs assert disability discrimination and failure to provide reasonable accommodation in violation of the FHA, retaliation in violation of the FHA, Tennessee common law breach of contract, violation of the Landlord Tenant Act, and Tennessee common law conspiracy [Doc. 1]. Plaintiffs seek at least $1,000,000 in compensatory damages and at least $2,000,000 in punitive damages [*Id.*]. They further seek attorney's fees and costs, pre-judgment and post-judgment interest, to be left in the quiet of their residence, and any other relief the Court deems appropriate [*Id.*].

## II.    Analysis

Rule 65 of the Federal Rules of Civil Procedure permits a party to seek injunctive relief if the party believes it will suffer irreparable harm or injury during the pendency of an action. Fed. R. Civ. P. 65. A preliminary injunction is "an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 24 (2008).

In determining whether to grant a plaintiff's request for injunctive relief, the Court must consider four factors: (1) whether the movant would suffer irreparable harm without

5

the injunction; (2) whether issuance of the injunction would cause substantial harm to others; (3) whether the public interest would be served by the issuance of the injunction; and (4) whether the movant has demonstrated a strong likelihood of success on the merits. *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002) (citation omitted); *accord Tumblebus, Inc. v. Cranmer*, 399 F.3d 754, 760 (6th Cir. 2005) (citation omitted). The factors are to be balanced and are "not prerequisites that must be met." *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007) (citation and internal quotation marks omitted).

The Court need not engage in a discussion of the preliminary injunction factors, however, because the Court finds the Anti-Injunction Act, 28 U.S.C. § 2283, precludes the relief requested by plaintiffs. The Anti-Injunction Act provides: "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. Plaintiffs are asking the Court to stay the proceedings in state court—specifically, to preclude defendants from executing on the detainer warrant for possession of the leased premises—which is an act expressly proscribed by the Anti-Injunction Act.

In addition, it does not seem any of the three exceptions set forth in the Anti-Injunction Act apply. Both parties agree neither the first nor third exception applies here, and the Court agrees. *See Scherbenske v. Wachovia Mortg., FSB*, 626 F. Supp. 2d 1052, 1059 (E.D. Cal. 2009) (noting that there is no federal statute authorizing the Court to

6

enjoin a state unlawful detainer action).  Regarding the second exception, the injunction plaintiffs seek is not necessary in aid of the court's jurisdiction.  Courts have applied this second exception in only two scenarios: "where the case is removed from the state court, and where the federal court acquires in rem or quasi in rem jurisdiction over a case involving real property before the state court does."  *Martingale LLC v. City of Louisville*, 361 F.3d 297, 302 (6th Cir. 2004) (citation omitted).  Neither of these scenarios exists here, and "courts have consistently held that this exception does not apply to a request for [an injunction] to enjoin the execution of a state-court unlawful detainer judgment."  *Brinson v. Univ. Am. Mortg. Co.*, No. G-13-463, 2014 WL 722398, at *2 (S.D. Tex. Feb. 24, 2014).  *See also Gray v. La Salle Bank NA,* No. 13-cv-03692, 2013 WL 4711672, at *2 (N.D. Cal. Aug. 30, 2013); *Michener v. Wells Fargo Home Mortg.*, No. 12-2003, 2012 WL 3027538, at *4 (N.D. Cal. July 24, 2012).

Accordingly, the Court finds the Anti-Injunction Act applies here and precludes the requested injunction.  *See Knoles v. Wells Fargo Bank, N.A.*, 513 F. App'x 414, 416 (5th Cir. 2013) (affirming denial of TRO where plaintiff sought to enjoin a bank from "enforcing a valid extant judgment of a Texas court").  And were the Court to consider the preliminary injunction factors, the Court would note that, despite plaintiffs' assertions of irreparable harm, money damages are an available form of relief for plaintiffs' FHA claims, *see* 42 U.S.C. § 3613(c)(1), and plaintiffs have made little effort in demonstrating the likelihood of success of their claims.

7

## III. Conclusion

For the reasons set forth herein, the Court hereby **DENIES** plaintiffs' Motion for Preliminary Injunction [Doc. 11].

IT IS SO ORDERED.


s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE