UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

PHILIP ISTRE and    )
WILLIAM CHRETIEN,   )
          )
    Plaintiffs,   )
          )
v.          )   No.: 3:15-CV-127-TAV-HBG
          )
HENSLEY PARTNERSHIP and  )
MARION FRANKLIN,    )
          )
    Defendants.   )

## MEMORANDUM OPINION AND ORDER

This civil action is before the Court on defendants' Motion for Summary Judgment [Doc. 37], to which plaintiffs responded [Doc. 44] and defendants replied [Doc. 50]. Also before the Court is plaintiffs' Motion for Partial Summary Judgment [Doc. 41], to which defendants responded [Doc. 48] and plaintiffs replied [Doc. 42]. For the reasons contained herein, the Court will grant in part and deny in part defendants' motion for summary judgment, and deny plaintiffs' motion for partial summary judgment.

## I. Background[1]

Plaintiff Philip Istre is a resident of Sevier County who was diagnosed with multiple sclerosis ("MS") in or around 2007 or 2008 [Doc. 43 p. 2; Doc. 49 p. 2].

---

[1] Defendants and plaintiffs filed statements of material facts in support of their motions [Docs. 39, 43], and the parties filed responses to such statements [Docs. 45, 49]. To the extent the parties agree on the existence of a fact, the Court cites to those documents [Docs. 39, 43, 45, 49]. In cases where the parties do not agree, or where facts were not included in the parties' statement of material facts, the Court cites to the factual documents in the record.

Plaintiff William Chretien is also a resident of Sevier County and was diagnosed with prostate cancer in 2011 [Doc. 43 p. 2; Doc. 49 p. 3]. On or about March 4, 2005, Chretien entered into a residential lease with defendant Hensley Partnership for real property located at Willa View, 428 Keegan Drive, Apartment #28, Pigeon Forge, Tennessee 37863, for a term of four months [Doc. 43 p. 2; Doc. 49 p. 2]. The term of the lease automatically renewed for four-month terms unless otherwise specified by the lessor or lessee [Doc. 43 p. 2; Doc. 49 p. 2]. Istre has resided with Chretien since 2005 [Doc. 43 p. 2; Doc. 49 p. 2]. Defendant Marion Franklin has served as property manager at Willa View since August 3, 2010 [Doc. 43 p. 2; Doc. 49 p. 2].

On or about July 9, 2013, plaintiffs requested accommodations for Istre's MS. Specifically, plaintiffs asked defendants to designate plaintiffs' assigned parking spot as a handicapped spot, and also to construct a wheelchair ramp permitting ingress and egress from the leased premises [Doc. 43 p. 3–4; Doc. 49 p. 5–6]. Plaintiffs assert that they offered to pay for the construction of the ramp [Doc. 43 p. 4; Doc. 49 p. 6]. Although defendants denied these specific requests, defendants offered to allow for the placement of a portable ramp permitting ingress and egress [Doc. 39 p. 7; Doc. 45 p. 12]. Defendants had also previously offered plaintiffs the use of a handicap-accessible apartment unit, but plaintiffs declined this offer [Doc. 43 p. 3; Doc. 49 p. 5]. Plaintiffs contend that they declined the offer of a handicap-accessible unit in part because Istre was not able to stand on the wooden floors featured in the handicapped-accessible apartment [Doc. 43-11 p. 2; Doc. 43-12 p. 1].

2

Also on July 9, 2013, Franklin sent plaintiffs a letter, which stated that defendants had received numerous telephone calls from several tenants with complaints of racial harassment by plaintiffs [Doc. 43-39 p. 20; Doc. 43-15; Doc. 49 p. 9]. The next day, on July 10, 2013, defendants further advised plaintiffs by letter that they had five days to vacate the unit due to late/non-payment of rent [Doc. 43 pp. 5–6; Doc. 49 p. 9]. Plaintiffs do not dispute that rent was unpaid at this time [Doc. 45 p. 5]. Plaintiffs subsequently paid the back rent, and defendants allowed them to remain in the unit [Doc. 43 pp. 5–6; Doc. 49 p. 10].

About three months later, in October 2013, plaintiffs renewed their requests for a designated handicapped parking spot and that they be permitted to install a permanent ramp [Doc. 43-17 pp. 2–3]. Defendants again denied these specific requests [Doc. 43 p. 6; Doc. 49 p. 10]. Defendants did, however, move plaintiffs' parking spot and place yellow stripes outlining the parking spot and an area next to the spot [Doc. 43 p. 6; Doc. 49 p. 11].

Subsequently, in May 2014, defendants allegedly accused plaintiffs of having an inoperable vehicle and demanded its removal, threatening to tow the vehicle if it were not removed [Doc. 43-37 pp. 15–16]. According to plaintiffs, defendants treated plaintiffs differently in this situation from other tenants [*Id.* at 17]. The next month, in June 2014, plaintiffs again requested a permanent ramp and a designated handicapped parking space [Doc. 43-23 pp. 2–3]. Defendants again denied the specific requests, but offered, in addition to a portable ramp, to provide a concrete bucket handicapped sign that plaintiffs

3

could move in and out of their parking space in lieu of a designated handicapped parking spot [*Id.*].

The issue of untimely rent payments arose again in December, 2014. Defendants assert that Istre promised to pay the December rent by December 12, 2014, which he failed to do [Doc. 38-14 p. 49]. Istre states that he only promised to try and pay rent by December 12, 2014, as opposed to promising to actually pay it [Doc. 45 p. 6].

On December 22, 2014, Franklin provided plaintiffs with an eviction notice. [Doc. 38-5]. As grounds, the final eviction notice provided: (1) "[l]ate/non-payment of rent;" (2) "[n]on-payment of rent promised to pay by 12/12/14 per Philip [Istre] $600 w/ late [fee];" (3) "[d]isorderly conduct;" (4) "[h]arassment of multiple tenants who have in the past occupied WV34, WV35, WV 29, or still do;" (5) "[r]epeated rule violations;" (6) "[v]andalism – damage to ceiling in kitchen + living area from broom/mop;" and (7) "refusing pest control + A/C filter change" [*Id.*]. Plaintiffs submit that when they contacted Franklin regarding the eviction, Franklin told them that they were being evicted because "[Istre] had pushed her and the tenants for the last time," and that she was "tired of all the phone calls from [Istre] in general" [Doc. 47-33 p. 34].

Plaintiffs subsequently initiated the instant action, asserting claims for violations of the Fair Housing Act ("FHA"), 42 U.S.C. § 3601, *et seq.*; Tennessee common law breach of contract; violations of the Landlord Tenant Act, Tenn. Code. Ann. § 66-28-101, *et seq.*; and Tennessee common law conspiracy [Doc. 1]. Defendants moved for

4

summary judgment as to all claims [Doc. 37]. Plaintiffs then moved for partial summary judgment [Doc. 41].

## II. Standard of Review

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986); *Moore v. Phillip Morris Cos.*, 8 F.3d 335, 339 (6th Cir. 1993). All facts and all inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 301 F.3d 937, 942 (6th Cir. 2002).

"Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations." *Curtis Through Curtis v. Universal Match Corp.*, 778 F. Supp. 1421, 1423 (E.D. Tenn. 1991) (citing *Celotex*, 477 U.S. at 317). The plaintiff must offer "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "[M]ere conclusory and unsupported allegations, rooted in speculation, do not meet that burden." *Bell v. Ohio State Univ.*, 351 F.3d 240, 253 (6th Cir. 2003) (citation omitted). Summary judgment may not be defeated "based on rumors, conclusory allegations, or subjective beliefs." *Hein v. All Am. Plywood Co.*, 232 F.3d

5

482, 488 (6th Cir. 2000). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson*, 477 U.S. at 248. The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Hein*, 232 F.3d at 488.

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the factfinder. *Anderson*, 477 U.S. at 250. The Court does not weigh the evidence or determine the truth of the matter. *Id.* at 249. Nor does the Court search the record "to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

Because there are cross-motions for summary judgment before the Court, for the claims where both parties have moved for summary judgment, the Court must look at the evidence in the light most favorable to plaintiffs, and also look at the evidence in the light most favorable to defendant, to determine whether either party is entitled to summary judgment. *Matsushita Elec. Indus.*, 475 U.S. at 587; *Burchett*, 301 F.3d at 942.

6

## III. Analysis

Plaintiffs and defendants each moved for summary judgment on the FHA claim based on failure to reasonably accommodate/ permit modification. Defendants also moved for summary judgment on all additional claims. The Court will discuss each claim in turn.[2]

### A. Failure to Provide Reasonable Accommodation/Modification

The parties each moved for summary judgment on the failure to reasonably accommodate/permit modification claim. Plaintiffs argue that by refusing to construct a permanent ramp at plaintiffs' expense, and by refusing to designate plaintiffs' parking spot as a handicapped spot, defendants failed as a matter of law to follow the mandates of the FHA. Defendants counter by arguing that plaintiffs' claims fail as a matter of law because the requests were not reasonable, and that defendants offered to make other reasonable accommodations, specifically the portable ramp, new designated parking space, cement handicapped sign, and the use of a handicapped apartment unit.

The FHA prohibits discrimination in the sale or rental of housing based on race, color, religion, sex, familial status, national origin, or handicap. *See* 42 U.S.C. § 3604. The FHA defines "handicap" with respect to a person as "(1) a physical or mental impairment which substantially limits one or more of such person's major life activities;

___

[2] The Court notes that the parties dispute whether evidence involving defendants' experience with the Fair Housing Act is relevant in this case. Because the Court need not consider this evidence in order to reach its summary judgment determinations, the Court will not resolve the issue at this stage in the litigation.

7

(2) a record of having such an impairment, or (3) being regarded as having such an impairment." *Id.* § 3602(h).

> Pursuant to 42 U.S.C. § 3604(f)(3)(A), discrimination includes:
>
> > a refusal to permit, at the expense of the handicapped person, reasonable modifications of existing premises occupied or to be occupied by such person if such modifications may be necessary to afford such person full enjoyment of the premises except that, in the case of a rental, the landlord may where it is reasonable to do so condition permission for a modification on the renter agreeing to restore the interior of the premises to the condition that existed before the modification, reasonable wear and tear excepted.

*Id.* § 3604(f)(3)(A). Furthermore, pursuant to § 3604(f)(3)(B), discrimination also includes:

> a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling.

*Id.* § 3604(f)(3)(B). Therefore, defendants are liable if either their refusal to permit the plaintiffs to construct a permanent ramp or their refusal to designate a handicapped parking space constitutes either a refusal to accommodate or a refusal to permit modification pursuant to §§ 3604(f)(3)(A) or 3604(f)(3)(B).

While a "modification" and an "accommodation" are distinct under the FHA, with modifications governed by § 3604(f)(3)(A) and accommodations by § 3604(f)(3)(B), "the same essential elements" apply to failure to modify and failure to accommodate claims. *See Hollis v. Chestnut Bend Homeowners Ass'n*, No. 3:12-cv-0137, 2014 WL 4446834, at *5 (M.D. Tenn. Sept. 10, 2014). The essential elements that plaintiffs must establish in order to prevail on a failure to accommodate or permit modification claim are that: 1) plaintiffs suffered from a disability; 2) plaintiffs requested an accommodation or

8

modification; 3) defendants refused to make the accommodation or permit the modification; and 4) defendants knew or should have known of the disability at the time of refusal.[3]  *See id.*   Furthermore, plaintiffs must also show that the requested accommodation or modification was both reasonable and necessary to afford them an equal opportunity to enjoy their residence.  *See id.*

Notably, "a qualified individual with a disability is not entitled to an accommodation of his or her choice but only to a reasonable accommodation."  *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 111 F.3d 1278, 1285–86 (11th Cir. 1997).  In order to determine whether an accommodation or modification is reasonable the Court must weigh the burden that the proposed accommodation or modification would cause to defendants against the benefits to plaintiff.  *See Hollis*, 2014 WL 4446834, at *6.  This inquiry is "highly fact-specific."  *Id.*  "Put simply, a modification should be deemed reasonable if it imposes no fundamental alteration in the nature of a program or undue financial and administrative burdens."  *Id.*

As plaintiffs have alleged two failures by defendants to accommodate or permit modification, the Court will address each separately.  The parties do not appear to dispute in their motions for summary judgment that plaintiffs were disabled, that defendants were aware of plaintiffs' disabilities, that plaintiffs requested accommodations/modifications, and that defendants denied the specific accommodations/modifications that plaintiffs

---

[3] The Sixth Circuit has indicated that the *McDonnell Douglas* framework is inapplicable to accommodation and modification claims under the FHA.  *See Hollis v. Chestnut Bend Homeowners Ass'n*, 760 F.3d 531, 540 (6th Cir. 2014).

9

requested. Therefore, the relevant issues in the parties' cross motions for summary judgment are whether each requested accommodation/modification was reasonable, as well as necessary to allow plaintiffs equal opportunity to enjoy their residence. The Court will first address the construction of a permanent ramp, and will then turn to the handicapped parking space, and determine whether either party is entitled to summary judgment as to each accommodation/modification.

### 1. Construction of a Permanent Ramp

Plaintiffs argue that as a matter of law the construction of a permanent ramp at plaintiffs' expense to permit Istre to more easily enter his apartment was reasonable and necessary due to Istre's reliance upon a wheelchair. Defendants argue that as a matter of law the construction of a permanent ramp was not reasonable because it would create safety issues by permanently blocking the sidewalk. Furthermore, defendants argue that they offered to permit plaintiffs to use a portable ramp. Finally, defendants argue that the construction of a permanent ramp does not constitute a proper accommodation under 42 U.S.C. § 3604(f)(3)(B), because it constitutes a structural change to an existing facility.

As an initial point, the Court notes that there is some case law which supports defendants' contention that the construction of a permanent ramp would not constitute an accommodation under § 3604(f)(3)(B). *See e.g.*, *Rodriguez v. 551 W. 157th St. Owners Corp.*, 992 F. Supp. 385, 387 (S.D.N.Y. 1998) (finding that the construction of a structure to make a building wheelchair accessible did not fall within the definition of "accommodation" under § 3604(f)(3)(B)). The Court need not reach this issue, however,

because it finds that the construction of a permanent ramp could constitute a modification under § 3604(f)(3)(A).[4]  Although § 3604(f)(3)(A) does not define "modification," regulations promulgated by the Department of Housing and Urban Development ("HUD") define modification as "any change to the public or common use areas of a building or any change to a dwelling unit."  *See Hollis*, 2014 WL 4446834, at *5 (citing 24 C.F.R. § 100.201).  Considering the HUD regulation, as well as that courts should give the FHA a broad interpretation, the Court finds that the construction of a ramp on the sidewalk leading to plaintiffs' apartment constitutes a modification under § 3604(f)(3)(A).  *See Epicenter of Steubenville, Inc. v. City of Steubenville*, 924 F. Supp. 845, 849 (S.D. Ohio 1996) ("Thus, to fully effectuate Congress' remedial purpose, courts must give the [FHA] a broad interpretation.").

Furthermore, plaintiffs submit that they offered to pay for the construction of the ramp, satisfying the requirement of § 3604(f)(3)(A) that the modification be done at the expense of the handicapped person.  *See* 42 U.S.C. § 3604(f)(3)(A).  Therefore, considering that the permanent ramp constitutes a modification within § 3604(f)(3)(A), the Court must look to whether the modification was reasonable and necessary.

---

[4]  The Court notes that the complaint, as well as much of the briefing in this case, discusses the permanent ramp in the context of a failure to accommodate claim.  The Court does note, however, that plaintiffs indicate in their briefing that they intend to use the terms "accommodation" and "modification" interchangeably, and that the complaint uses both terms [Doc. 47 p. 1].  In light of this, and considering that the "same essential elements" apply to both failure to accommodate and failure to modify claims, the Court finds that it is appropriate to consider the failure to construct the permanent ramp as a failure to permit modification.  *See Hollis*, 2014 WL 4446834, at *5

The Court has considered the arguments of both plaintiffs and defendants, and finds that there is a material question of fact as to whether the permanent ramp was a reasonable, necessary modification. Plaintiffs have offered evidence that due to Istre's dependence on a wheelchair, as well as Christein's limitations following his diagnosis with prostate cancer, plaintiffs required installation of a permanent ramp to allow Istre to enter his apartment without assistance [*See e.g.*, Doc. 43-36 p. 21]. Plaintiffs further argue that defendants proposed accommodation, a portable ramp, was not sufficient because a wheelchair bound Istre would not be able to place and remove a portable ramp each time he wished to enter and exit his apartment [Doc. 43-36 pp. 16–17]. Additionally, plaintiffs argue that they would have removed the ramp when they moved out of that apartment, lessening the burden on defendants [*Id.* at 20].

In contrast, defendants have offered evidence that the construction of a permanent ramp was not reasonable because it would have permanently blocked the sidewalk, which would have resulted in safety issues for other tenants [Doc. 38-15 p. 9]. Furthermore, defendants argue that contrary to plaintiffs' contentions, the temporary ramp constituted a reasonable modification, as evidenced by the fact that a tenant in another complex had a portable handicap ramp built [Doc. 38-14 p. 26].

Based on the evidence presented at this time, particularly with regard to the permanent ramp being necessary to permit Istre to enter and exit his apartment, as well as the permanent ramp constituting a safety hazard for other tenants, a reasonable finder of fact could find in favor of either party with respect to whether the permanent ramp was a

12

reasonable and necessary modification. *See Anderson*, 447 U.S. at 250. The Court notes as well that because the reasonableness inquiry is highly fact-intensive, it is particularly well suited for resolution by the factfinder. *See Hollis*, 2014 WL 4446834, at * 6 (noting that the reasonableness inquiry is "highly fact-specific"). Consequently, the Court finds that there is a material question of fact as to whether defendants' refusal to allow plaintiffs to construct a permanent ramp constituted a failure to permit reasonable modification as required by the FHA, and thus, neither party is entitled to summary judgment on this issue.

### 2. Designated Handicapped Parking Space

The Court next turns to plaintiffs' request for a handicapped designated parking space. Plaintiffs argue that the designated parking space was a reasonable, necessary accommodation. Specifically, plaintiffs submit that order to utilize the handicapped features of their van, they needed unobstructed access to the van. Plaintiffs further submit that their assigned parking space was unsuited for this purpose due to other tenants or guest either frequently parking in plaintiffs' parking space, or parking in such a manner that prohibited plaintiffs from having unobstructed access to the van. Plaintiff argues that these problems would be resolved by having the parking space designated as handicapped by painting the "familiar, universal handicap emblem" on the space [Doc. 47 p. 13].

13

Defendants argue that while they did not designate plaintiffs space as handicapped in the manner that plaintiffs would have preferred, they made a reasonable accommodation because they moved plaintiffs' assigned parking space for their unit to an area which would provide an open, unobstructed area to allow for plaintiffs to utilize their van. Defendants further note that they offered plaintiffs the use of the concrete bucket handicapped sign, and also that plaintiffs' van was inoperable for much of the relevant time at issue.

The Court has considered the parties arguments, as well as the record in this case, and finds that there is a material question of fact as to whether defendants' failure to designate plaintiffs' parking space as a handicapped space constitutes a failure to reasonably accommodate under the FHA. The Court notes that the parties do not dispute that defendants offered to accommodate plaintiffs by means of a less obstructed, designated parking spot, as well as a concrete bucket handicapped sign. *See Stewart*, 111 F.3d at 1285 ("a qualified individual with a disability is not entitled to an accommodation of his or her choice but only to a reasonable accommodation."). The Court also notes that plaintiffs admit that they rarely used the van to transport Istre because of mechanical issues. The Court also notes, however, that some of plaintiffs' reasoning for requesting accommodation may not have been redressed by these defendants' proposed accommodations, specifically the issue of others parking in plaintiffs' parking spot and plaintiffs' inability to lift the concrete sign [*See e.g.*, Doc. 43-36 p. 22–26].

14

Considering this, the Court finds that a reasonable finder of fact could find in favor of either party with respect to whether the accommodations offered by defendants would have permitted plaintiffs "full enjoyment of the premises," as required by the FHA, or whether defendants should have granted plaintiffs their requested accommodation of a handicapped designated parking spot. *See Hollis*, 2014 WL 4446834, at *5–6 (noting that the necessity element looks to whether the accommodation would allow disabled resident to "receive the same enjoyment from the property as a non-disabled person would receive"). Because the Court believes that a reasonable factfinder could find either that defendants' offered accommodations constituted reasonable, necessary accommodations, or that defendants should have designated the handicapped parking spot as plaintiffs wished, the Court may not resolve this dispute for purposes of summary judgment. *See Anderson*, 477 U.S. at 250.

Defendants cite several cases from outside of this circuit, as well as a federal regulation promulgated under the FHA, to support their contention that granting plaintiffs an assigned parking space constituted a reasonable accommodation as a matter of law. *See, e.g.*, 24 C.F.R. § 100.204; *Astralis Condo. Ass'n v. Secretary, U.S. Dept of HUD*, 620 F.3d 62 (1st Cir. 2010); *Sturm v. Davlyn Invs. Inc.*, No. 12-07305 DMG, 2013 WL 8604662 (C.D. Cal. Sept. 30, 2013). The Court has reviewed these sources, and finds that they do not require that the Court grant summary judgment in favor of defendants. While the cases cited by defendants, as well as the HUD regulation, demonstrate that in certain situations a designated parking spot can constitute a reasonable accommodation,

15

they do not encompass a situation involving a wheelchair bound tenant for whom a designated spot alone is arguably not sufficient, and where the designated parking spot arguably did not resolve all of the tenant's parking issues. *See e.g.*, 24 C.F.R. § 100.204 (stating that a reserved parking spot near an individual's apartment unit was a reasonable accommodation when the individual was "mobility impaired and unable to walk more than a short distance"); *Sturm v. Davlyn Investments, Inc.*, 2013 WL 8604662, at *8 (granting summary judgment for defendant on failure to reasonably accommodate where defendant did not designate handicapped parking space, but where plaintiff did not have a car).[5] Considering the fact-intensive nature of the reasonableness inquiry, it would be inappropriate for Court to find that a designated parking spot is a reasonable, necessary accommodation as a matter of law, regardless of the specific circumstances of the tenant's disabilities. *See Hollis*, 2014 WL 4446834, at *5.

In sum, the Court finds that there are material issues of fact as to whether defendants refusal to permit plaintiffs to build a permanent ramp and their refusal to designate plaintiffs' parking spot as handicapped constitute failures to reasonably accommodate/permit modification. As such, the Court will deny each parties' motion for summary judgment as to the failure to accommodate/permit modification claims.

---

[5] The Court notes that defendants state, and plaintiffs do not dispute, that the handicapped van lift was inoperable for a period of time, and that plaintiffs seldom used the lift due to its unreliability [Doc. 45 p. 10]. The Court also notes however, that plaintiffs submit that it was not permanently inoperable, and that the record indicates that plaintiffs continued to use the van, and used the lift on at least a few occasions. [*See, e.g.,* Doc. 43-36 p. 26 ("One photo actually clearly shows the van return and he can't get in his handicapped parking space, our designated space."); Doc. 47-32 p. 8 (indicating that plaintiffs used the van together on a few occasions)]. Therefore, this case is distinguishable from *Sturm*, where the tenant did not have a car.

## B.     Retaliation Claim

Defendants also moved for summary judgment on plaintiffs' FHA retaliation claim.   Under 42 U.S.C. § 3617, "it is unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed his or her rights under the [FHA]."   *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 236 (6th Cir. 2003).   When a plaintiff asserts a claim under § 3617, in the absence of direct evidence, a district court applies the *McDonnell Douglas* burden shifting analysis.   *See Robbins v. Am. Preferred Mgmt. Co.*, No. 5:05-cv-182, 2007 WL 2728746, at *11 (W.D. Mich. Sept. 17, 2007); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).   Under the *McDonnell Douglas* framework, a plaintiff must first show a prima facie case of retaliation.   *Robbins*, 2007 WL 2728746, at *11.   If the plaintiff demonstrates a prima facie case, the burden shifts to the defendant to offer a "legitimate, non-discriminatory or non-retaliatory reason for its adverse action."   *Id.* Once the defendant has offered a legitimate reason, the burden then shifts back to the plaintiff to show that the reason offered is pretextual.   *Id.*   The Court will address each step of the *McDonnell Douglas* framework in turn.

### 1.     Prima Facie Case of Retaliation

Under the *McDonnell* Douglas framework, plaintiffs are first required to demonstrate a prima facie case of retaliation.   *See Lindsay v. Yates*, 578 F.3d 407, 415 (6th Cir. 2009) ("On summary judgment, this burden-shifting scheme first requires that the plaintiff present evidence from which a reasonable jury could conclude that there

17

exists a *prima facie* case of housing discrimination."). In order to establish a prima facie case of retaliation, plaintiffs must establish: 1) that they exercised a right guaranteed by the FHA; 2) that defendants' intentional conduct constituted coercion, intimidation, threat, or interference; and 3) that there was a causal connection between plaintiffs' exercise of their FHA rights and the defendants' conduct. *See Robbins*, 2007 WL 2728746, at *11 (citing *Hood v. Midwest Sav. Bank*, 95 F. App'x 768, 779 (6th Cir. 2004)). "In order to demonstrate the causal connection, [p]laintiff[s] must show that [d]efendants had actual knowledge of the protected activity." *Id.* (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 387 n.3 (6th Cir. 1999)). In addition, "a plaintiff is required to demonstrate a discriminatory animus" to prevail on an interference claim under the Act." *See Wells v. Rhodes*, 928 F. Supp. 2d 920, 931 (S.D. Ohio 2013).

With respect to the first element, the requirement that plaintiffs exercised a right protected under the FHA, the Court notes that it is undisputed that plaintiffs requested two accommodations/modifications, the permanent ramp and the designated handicapped parking spot. As the Court has already discussed, there is a triable issue of material fact with respect to whether each of these requests constitutes a reasonable and necessary accommodation/modification. In the event that the trier of fact determines that plaintiffs' requests were for reasonable, necessary accommodations/modifications, then by requesting these accommodations/modifications plaintiffs were exercising rights protected under the FHA. *See* 42 U.S.C. §§ 3604(f)(3)(A), 3604(f)(3)(B). As such, the

Court finds that plaintiffs have established that there is a material question of fact as to the first element of their prima facie case.

The Court next turns to the second element, which requires plaintiffs to demonstrate that defendants' intentional conduct constituted coercion, intimidation, threat, or interference, and that this intentional conduct was casually connected to plaintiffs' request for reasonable accommodation/modification. *See Robbins*, 2007 WL 2728746, at *11. Plaintiffs cite to a number of instances in which they allege defendants' conduct rose to the level required in order to satisfy this element. Specifically, plaintiffs argue that defendants retaliated against them by sending a letter accusing plaintiffs of making racial comments to other tenants on July 9, 2013, sending a written notice threatening to evict plaintiffs for nonpayment of rent on July 10, 2013, placing a note on plaintiffs' vehicle threatening to tow it, and by ultimately terminating the lease. The Court finds that this conduct satisfies the second element of plaintiffs' prima facie case. *See Chavez v. Aber*, 122 F. Supp.3d 581, 600 (W.D. Tex. 2015) (finding that the plaintiffs stated a claim for retaliation under the FHA where landlord had delivered notices to vacate and filed suits for eviction).

The Court now turns to the third element, which requires that plaintiffs demonstrate a causal connection between plaintiffs' requests for accommodation/modification, and defendants' conduct. *See Robbins*, 2007 WL 2728746, at *11. As an initial point, the Court notes that it is not disputed that defendants were aware of plaintiffs' requests. *See id.* Additionally, with respect to defendants'

19

termination of plaintiffs' lease, plaintiffs have introduced evidence, specifically in the form of Franklin's deposition testimony, that provides some indication that the reason behind the termination was that Franklin was "tired of all the phone calls from [Istre]." [*See* Doc. 47-33 p. 34]. A reasonable jury could conclude that these calls referenced by Franklin included Istre's requests for accommodation/modification. Furthermore, the fact that that defendants had, on several other occasions, permitted plaintiffs to pay rent late, further supports plaintiffs' argument that defendants terminated plaintiffs' lease not because of their failure to pay rent, but because of Franklin's frustration with their repeated requests for accommodation/modification.

In addition, although it is not contested either that defendants received complaints from other tenants regarding harassment by plaintiffs, or that plaintiffs were in arrears in rent in July 2013, the fact that defendants sent notices to plaintiffs regarding these issues nearly contemporaneously to plaintiffs' July 9, 2013, request for accommodation/modification supports the inference that the notices are casually related to the requests. *See Lindsay v. Yates*, 578 F.3d 407, 419 (6th Cir. 2009) (noting that "a reasonable juror may infer a plaintiff's undertaking of a protected activity was the likely reason for the defendant's adverse action when the temporal proximity is 'very close' in retaliation cases").

In addition, the Court notes that this conduct also establishes the discriminatory animus required to establish a claim under 42 U.S.C. § 3617. *See Wells v. Rhodes*, 928 F. Supp. 2d at 931. Considering that the FHA includes a failure to accommodate/permit

20

modification within the statutory definition of discrimination, the evidence introduced by plaintiffs that defendants retaliated in response to plaintiffs' requests for accommodation/modification is evidence of discriminatory animus.

The Court does note, however, that plaintiffs cannot demonstrate a causal connection between defendants' threat to tow plaintiffs' then inoperable van, and plaintiffs' requests for accommodation/modification. Although plaintiffs alleged that they were treated differently from other tenants with inoperable vehicles, there is no close temporal link between the placement of the note and plaintiffs' requests for accommodation and modification. As such, the Court finds that while plaintiffs have established a prima facie case of retaliation with respect to the eviction and the July 9, 2013, and July 10, 2013, notices, plaintiffs have not established a prima facie case with respect to the note threatening to tow their van.

Defendants argue that plaintiffs cannot establish a prima facie case with respect to the termination of their lease, because they cannot show a causal connection between activity protected by the FHA and defendants' termination of the lease. Defendants base their argument on the fact that plaintiffs received their notice of eviction for failure to pay rent prior to plaintiffs filing a complaint with HUD or the Tennessee Human Rights Commission ("THRC"). This argument is not well taken. Although plaintiffs may not have filed complaints with HUD and the THRC until after receiving a notice of eviction, plaintiffs had requested accommodation/modification on numerous occasions, well before receiving notice of eviction. These requests, should the fact-finder determine that

21

they were reasonable and necessary, would constitute protected activity under the FHA. *See* 42 U.S.C. §§ 3604(f)(3)(A), 3604(f)(3)(B). *See Wilson v. Wilder Balter Partners, Inc.*, No. 13-cv-2595, 2015 WL685194, at *12 (S.D.N.Y. Feb. 17, 2015) ("[A] request for a reasonable accommodation is [a] protected activity under the FHA."). Therefore, a reasonable jury could determine that plaintiffs engaged in conduct protected by the FHA prior to defendants terminating their lease, and thus that there is a causal connection between the protected activity and defendants' alleged retaliatory conduct.

In sum, the Court finds that plaintiffs have established a prima facie case of retaliation under 42 U.S.C. § 3617 sufficient to survive summary judgment.

### 2.    Legitimate, Non-Retaliatory Reason for Adverse Action

The burden now shifts to defendants to articulate a non-retaliatory, non-discriminatory reason for having terminated plaintiffs' lease, as well as for sending the July 9, 2013, and July 10, 2013, notices. *See Robbins*, 2007 WL 2728746, at *11.

With respect to terminating the lease, defendants have offered the following non-retaliatory, non-discriminatory reasons for their action: 1) nonpayment of rent; 2) harassment of multiple tenants; 3) vandalism; and 4) refusing pest control + A/C/ filter change [Doc. 38-5]. Although plaintiffs dispute the factual veracity of a number of these reasons, the Court notes that it is undisputed that plaintiffs were in arrears on their rent payments at the time of termination. A number of district courts, including at least one in this circuit, have found that a tenant's failure to pay rent constitutes a legitimate, non-retaliatory, non-discriminatory reason for terminating a tenant's lease. *See e.g., Ward v.*

22

*Dickens*, No. 3:11-cv-362, 2012 WL 1038184, at *3 (W.D. Ky. Mar. 27, 2012) ("Plaintiff's failure to pay rent provides Defendants with a legitimate, nondiscriminatory reason for denying Plaintiff his request for accommodations of his disability and for any allegedly retaliatory conduct."). The Court agrees with these district courts, and finds that defendants' proffered reasons for terminating plaintiffs' lease, particularly plaintiffs' failure to timely pay rent, constitute legitimate, non-discriminatory, non-retaliatory reasons for terminating the lease.

With respect to the July 9, 2013, and July 10, 2013 notices, the Court notes that defendants have asserted that they received complaints from other tenants regarding alleged harassment by Istre. [Doc. 38-6 p. 2]. Furthermore, plaintiffs do not dispute that "not all rent payments were made within the time frame prescribed by the lease" [Doc. 45 p. 5]. These constitute legitimate, non-discriminatory reasons for sending the notices.

As such, the Court finds that defendants have met their burden of articulating legitimate, non-discriminatory reasons for terminating plaintiffs' lease, as well as for sending the July 9, 2013, and July 10, 2013, notices.

### 3.    Whether Defendants' Proffered Reasons are Pretextual

The burden now shifts back to plaintiffs, who must demonstrate that defendants' proffered reasons for terminating the lease are pretextual. *See Robbins*, 2007 WL 2728746, at *11. In order to meet this burden for purposes of summary judgment, "plaintiff[s] must identify evidence from which a reasonable jury could conclude that the

proffered reason[s] [are] actually pretext for unlawful discrimination." *See Ward*, 2012 WL 1038184, at *4.

The Court finds that plaintiffs have met this burden. Firstly, plaintiffs point to defendant Franklin's deposition, in which Franklin indicated at the time of the lease's termination that "[Istre] had pushed [her] and the tenants for the last time," and that she was "tired of all the phone calls from [Istre] in general" [Doc. 47-33 p. 34]. A reasonable jury could conclude that these phone calls from plaintiff referenced by Franklin include calls requesting accommodation/modification, and were the real reason why defendants terminated plaintiffs' lease. Secondly, plaintiffs point to the fact that the letter in which Franklin warned plaintiffs that defendants had received a number of complaints from other tenants regarding plaintiffs making racial comments and harassing other tenants, was sent nearly contemporaneously to when plaintiffs made requests for accommodation/modification. Furthermore, the letter threatening to evict plaintiffs for nonpayment of rent was sent only one day later, on July 10, 2013. The time at which these letters were sent could support a reasonable jury's conclusion that the reasons offered in the letter were pretextual, and that the letters were really sent in response to the requests for accommodation/modification. *See Lindsay*, 578 F.3d at 419 ("Just as a reasonable juror may infer a plaintiff's undertaking of a protected activity was the likely reason for the defendant's adverse action when the temporal proximity is 'very close' in retaliation cases . . . ."). As such, the Court finds that plaintiffs have met their burden of

24

introducing evidence such that a reasonable jury could conclude that the proffered reasons are pretextual. *See Ward*, 2012 WL 1038184, at *4.

Defendants argue that their decision to terminate plaintiffs' lease based on nonpayment of rent is not pretextual as a matter of law, and cite a number of cases in support of their argument. The Court has reviewed these cases, and finds that they do not support defendants' argument.

The first case defendants cite is *Ward v. Dickens*, a case in which the Western District of Kentucky granted summary judgment for the defendants on reasonable accommodation and retaliation claims. 2012 WL 1038184, at *4. While the court did so after finding that plaintiff had not paid rent, which the court found to be a legitimate, non-discriminatory reason for denying plaintiff's requests for accommodation, the court also found that plaintiff offered no evidence from which a reasonable jury could conclude that the failure to pay rent was pretextual. *See id.* In fact, the court specifically noted that such a showing would have precluded summary judgment. *See id.* ("To preclude summary judgment, Plaintiff must show that Defendants' proffered reason is a pretext that masks discrimination."). In this case, however, plaintiffs have offered evidence from which a reasonable jury could find that defendants' stated reasons for terminating the lease were pretextual, particularly the phone call with Franklin. Therefore, the Court's ruling in this case is consistent with the district court's ruling in *Ward*.

Similarly, the other cases cited by defendants, *Morris v. Dehaan*, 944 F.2d 905 (6th Cir. 1991); *Stephenson v. Ridgewood Village Apartments*, No. 1:93-cv-614, 1994 WL 792581 (W.D. Mich. Nov. 10, 1994); and *Mercado v. Realty Place, Inc.*, No. 2-14-cv-2644, 2015 WL 5626510 (S.D. Ohio Sept. 24, 2015); do not support defendants' arguments. Although these cases each involve situations where tenants had failed to timely pay rent or comply with terms of their leases and district courts dismissed FHA claims, the cases do not involve a situation where plaintiff offered evidence from which a reasonable juror could find that the failure to pay rent was a pretextual reason for taking adverse action. Such a showing precludes summary judgment. *See Ward*, 2012 WL 1038184, at *4. As such, the Court does not find that these cases support defendants' argument that plaintiffs' failure to pay rent requires as a matter of law that the Court dismiss plaintiffs' retaliation claim.

In sum, the Court will deny defendants' motion for summary judgment as to the FHA retaliation claim.

### C. Tennessee Breach of Contract Claim

Plaintiffs' complaint also asserts a Tennessee law breach of contract claim. Although defendants' motion for summary judgment states that the breach of contract claim should be dismissed, it does not contain a specific argument as to why that claim should be dismissed. Furthermore, the section of defendants' brief in which defendants assert that the breach of contract claim should be dismissed is titled "Summary Judgment is proper as to all claims under the Tennessee Uniform Residential Landlord-Tenant Act"

[Doc. 38 p. 21].  In addition, plaintiffs also make no specific argument in their response regarding the breach of contract claim [Doc. 47].  As such, the Court does not find that it is able to reach a determination on the breach of contract claim for purposes of summary judgment, and will deny defendants' motion for summary judgment with respect to the breach of contract claim.

### D.    Claims Brought Under the Tennessee Uniform Residential Landlord-Tenant Act

The complaint also alleges a number of claims arising under the Tennessee Uniform Residential Landlord-Tenant Act ("URLTA").  Specifically, plaintiff contends in the complaint that defendants violated the following provisions of the URLTA:  Tenn. Code Ann. § 66-28-304(a)(1)–(3); § 66-28-505(a)(2); § 66-28-508; § 66-28-514(a)(1)–(2); § 66-28-514(a)(1)-(2); and § 66-28-516.  In their motion for summary judgment, defendants assert that all such claims should be dismissed.  In their motion, however, defendants only address plaintiffs' URLTA claim alleging a violation of Tenn. Code Ann. § 66-28-505(a)(2), which is based on defendants' failure to provide plaintiffs with notice and an opportunity to remedy any alleged breach of the lease agreement before plaintiffs were evicted.  *See* Tenn. Code Ann. § 66-28-505(a)(2).

In asserting that this claim should be dismissed, defendants argue that the lease expressly waived any notice requirement, and granted defendants the right to terminate the lease "without the necessity of demand or notice" upon lessee's failure to pay rent. [Doc. 38 p. 23].  Therefore, defendants argue that they did not violate § 66-28-505(a)(2) by failing to provide plaintiffs with notice and an opportunity to remedy any breaches of

the lease agreement. The Court notes that plaintiffs neither dispute the terms of the lease, nor offer any argument in response to defendants' assertions. As such, the Court will grant defendants' motion for summary judgment with respect to the URLTA claim under § 66-28-505(a)(2).

The Court further notes, however, that defendants offer no arguments as to why the other URLTA claims addressed in the complaint should be dismissed. As such, the Court will not dismiss any of plaintiffs' other URLTA claims.

### E. Civil Conspiracy Claim

The complaint also brings a claim of civil conspiracy, asserting that defendants conspired to commit the previously discussed violations. Defendants argue that summary judgment is appropriate with respect to this claim both because plaintiffs cannot establish any underlying violations, and because there are no facts supporting any conspiracy between defendants. The Court notes that plaintiffs did not respond to this argument in their response to defendants' motion for summary judgment.

While the Court notes that it has determined that there are material questions of fact with respect to whether defendants committed the underlying violations alleged in the conspiracy claim, plaintiff has not identified any evidence of a conspiracy between defendants, nor presented the Court with any argument as to why the conspiracy claim should not be dismissed. As plaintiffs have failed to provide evidence upon which a reasonable jury could determine that defendants engaged in a civil conspiracy, the Court will grant defendant's motion with respect to this claim.

28

**IV.    Conclusion**

For the reasons discussed herein, the Court hereby **DENIES** plaintiffs' Motion for Partial Summary Judgment [Doc. 41], and **GRANTS in part and DENIES in part** defendants' Motion for Summary Judgment [Doc. 37] in that the Court hereby **DISMISSES** plaintiffs' civil conspiracy claim, as well as the claim alleging a violation of Tenn. Code Ann. § 66-28-505(a)(2).

IT IS SO ORDERED.

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE